[Civ. No. 4929. First Appellate District, Division Two.—September 3, 1924.]

## MANUEL R. SILVA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—CONTINUING JURISDICTION OF INDUSTRIAL ACCIDENT COMMISSION—PURPOSE OF SECTION 20D.—Section 20d of the Workmen's Compensation and Safety Act, which confers upon the Industrial Accident Commission continuing jurisdiction over its orders, decisions, and awards, and provides that it may at any time, upon notice, rescind, alter, or amend any such order, upon good cause appearing therefor upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated, was enacted to enable the Industrial Accident Commission to reopen and reconsider an award where the equities of the case demanded it. Its purpose was to grant relief from the general rule that an order or decision of a *quasi*-judicial body when filed was not open to amendment or reconsideration.

[2] ID.—SECTION 20D—DISCRETION.—Section 20d of the Workmen's Compensation and Safety Act is permissive in character and merely authorizes the Industrial Accident Commission to rescind, alter, or amend its orders when a proper showing is made to it for that purpose, and the commission is, therefore, necessarily vested with certain discretion and it is not to be assumed that an order or decision fixing the rights and obligations of the respective parties would be lightly cast aside upon the mere petition of one of the parties who thereafter became dissatisfied.

[3] ID.—AGREEMENT OF COMPROMISE OF CLAIM—ORDER OF APPROVAL BY COMMISSION — NATURE OF — SETTING ASIDE OF — BURDEN OF PROOF.—When the rights of the parties to a proceeding before the Industrial Accident Commission have been adjusted by mutual

<hr />

1. Right and extent of review of findings of Industrial Accident Commission, notes, L. R. A. 1917D, 186. See, also, 28 R. C. L. 823.
3. See 5 R. C. L. 895.

agreement approved by the commission, the order of approval is entitled to the same weight as an award made after a full hearing; and if one of the parties to such an agreement becomes dissatisfied and seeks to be relieved from its terms through the provisions of section 20d of the Workmen's Compensation and Safety Act, it is incumbent upon him to make a showing before the commission in the first instance that the agreement of compromise was not in fact his agreement, but that it was the result of fraud, mistake, duress, or undue influence.

[4] ID.—APPLICATION FOR RELIEF FROM COMPROMISE AGREEMENT—RESCISSION—APPLICABILITY OF CODE PROVISIONS.—The provisions of the sections of the Civil Code relating to rescission of contracts apply in a measure to an application by an injured employee to the Industrial Accident Commission for relief from an agreement of compromise of his claim which was approved by the commission, and for additional compensation on account of a new diagnosis of his physical condition.

[5] ID.—TIME—EVIDENCE.—Where an injured employee made application to the Industrial Accident Commission for relief under section 20d of the Workmen's Compensation Act from an agreement of compromise of his claim and for additional compensation on account of a new diagnosis about three years after the date of his injury and more than eight months after he had learned of the new diagnosis, which was made almost a year and five months after the commission approved the agreement of compromise, it cannot be said that such employee acted promptly in making his application for relief.

[6] ID.—RESCISSION—RESTORATION—EVIDENCE.—On such application, relative to the question of restoration of benefits received by such employee in rescinding the agreement of compromise, it could not be taken for granted that the insurance carrier would owe him as much as the benefits already received by him or more, where the relation of the injury disclosed by the new diagnosis to a fall by such employee from a ladder was a disputed point, and it was altogether possible that upon a rehearing before the commission it might be determined that the employee's disability resulted from some other cause for which the insurance carrier would not be responsible.

[7] ID.—CONSTRUCTION OF AGREEMENT.—An agreement of compromise of an industrial claim which provides that the Industrial Accident Commission "may enter its award upon the foregoing agreed statement of facts, upon the request of either party or upon its own motion at any time subject to the right of the commission

4.    See 4 Cal. Jur. 756; 6 R. C. L. 921.
5.    See 4 Cal. Jur. 800; 6 R. C. L. 935.

to set aside said statement of facts or to reopen said award at any time under its continuing jurisdiction" merely confirms the jurisdiction of the commission as conferred by section 20d of the Workmen's Compensation and Safety Act. It does not in terms or by implication grant to either party the right to have the compromise agreement rescinded or altered unless the commission should determine in the exercise of its jurisdiction that such action should be taken.

[8] ID.—ORDER OF COMMISSION—CONSTRUCTION—CERTIORARI.—On such application, where the order of the Industrial Accident Commission recited that the application was denied upon the ground that the compromise and release was a bar to the claim for further relief, this does not necessarily mean that a compromise and settlement of a claim is in every instance a legal bar to an application for relief under section 20d of the Workmen's Compensation and Safety Act; and though the ground assigned for the order may not be technically correct, if it was valid on any ground it is not subject to attack on *certiorari*.

[9] ID. — ANNULMENT OF AMENDMENT OF AWARD — JURISDICTION — EQUITY.—Section 20d of the Workmen's Compensation and Safety Act confers upon the Industrial Accident Commission discretion to determine whether an application for the amendment or annulment of an award is equitable, and where no equities are shown it cannot be said that the commission has acted without jurisdiction in denying such an application.

(1) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (2) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (3) Workmen's Compensation Acts, **C. J.**, p. 108, sec. 106, p. 132, sec. 151. (4) Workmen's Compensation Acts, **C. J.**, p. 108, sec. 106 (Anno.), p. 132, sec. 151. (5) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (6) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (7) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (8) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151. (9) Workmen's Compensation Acts, **C. J.**, p. 132, sec. 151.

PROCEEDING on Certiorari to review an order of the Industrial Accident Commission denying application for relief from compromise agreement and for additional compensation. Order affirmed; writ discharged.

The facts are stated in the opinion of the court.

Gilman & Harnden for Petitioner.

Warren H. Pillsbury, H. C. Kelsey, Barry J. Colding and Theodore Hale for Respondents.

NOURSE, J.—On November 6, 1920, petitioner fell from a ladder to the floor sustaining fractures of two bones of his right foot. He was placed under the care of the physicians of the employers' insurance company and weekly payments under the Workmen's Compensation Act were begun. Controversy having arisen over the determination of his weekly wages the petitioner, on March 16, 1921, filed an application with the respondent Commission for an adjustment. A hearing was had and on May 21, 1921, the Commission entered its finding and award allowing the petitioner $20.83 a week until the termination of his disability. This decision contained a reservation to the effect that "permanent disability may result from the injury, in which event this commission will, upon request after the condition becomes stationary, take proceedings to determine same and amend the award accordingly." The petitioner did not avail himself of this privilege, but on November 22, 1921, he compromised the entire claim with the insurance carrier for the lump sum of $1,000 in addition to the sum of $1,106.82 which had theretofore been paid to him by the insurance carrier. In the agreement for a compromise the petitioner gave as a reason therefor that he desired to use the money in a grocery business. This compromise was approved by the Commission on December 2, 1921, and on December 10th following, there was filed with the Commission a receipt for the money and a final release of all claims executed by this petitioner.

Thereafter the petitioner was treated intermittently by his own physician and by two others upon whom he called. To one he complained of pains in the back and was treated for lumbago. To the others he complained of the pain in his foot only. An examination of the spine was made by one of these physicians and on April 20, 1923, this physician diagnosed his trouble as a fracture of the spine and placed his back in a plaster cast for treatment. The petitioner had not at any time while under treatment of the physician of the insurance carrier complained of any trouble with his back. On November 30, 1923, more than eight months after the diagnosis of the physician who reported a fractured spine, the petitioner filed an application with the Commis-

sion for additional compensation on account of such new diagnosis. The insurance carrier set up in defense the agreement of compromise and the release approved by the Commission, and after two hearings the respondent Commission, on February 19, 1924, denied the petitioner's application upon the ground that the compromise release was a bar to the claim, and did not determine any other issue. At the hearings before the Commission there was a sharp and decided conflict between the testimony of the respective physicians as to the real cause of petitioner's suffering and the correctness of the diagnosis of a fractured spine has not been admitted or proved. Furthermore, the petitioner failed to prove that a fracture of the spine resulted from the fall which he sustained on November 6, 1920, and in this proceeding he has not alleged that such is the fact.

The question involved in this proceeding is whether the respondent Commission had jurisdiction to deny petitioner's application for relief from the compromise and for additional compensation, because in a proceeding for *certiorari* the only question involved is whether the inferior tribunal had jurisdiction to perform the act complained of. In his petition in this court for a writ of *certiorari* the petitioner states that he relies on section 20d of the Workmen's Compensation and Safety Act of 1917 (Stats. 1917, p. 850), and sections 1566–1589, inclusive, and sections 1689–1791, inclusive, of the Civil Code of California, and on paragraph 10 of the agreement of compromise and release.

Section 20d of the Workmen's Compensation and Safety Act confers upon the Industrial Accident Commission continuing jurisdiction over its orders, decisions, and awards, and provides that it "may at any time, upon notice, . . . rescind, alter or amend any such order, . . . upon good cause appearing therefor . . . upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated." The sections of the Civil Code referred to relate generally to the terms and conditions under which contracts may be rescinded for mistake, duress, fraud, or undue influence. Section 10 of the agreement of compromise provides that the Industrial Accident Commission "may enter its award upon the foregoing agreed statement of facts, upon the request of

either party or upon its own motion at any time subject to the right of the commission to set aside said statement of facts or to reopen said award at any time under its continuing jurisdiction.''

[1] The provisions of section 20d of the Workmen's Compensation and Safety Act were plainly enacted to enable the Industrial Accident Commission to reopen and reconsider an award where the equities of the case demanded it. Its purpose was to grant relief from the general rule that an order or decision of a *quasi*-judicial body when filed was not open to amendment or reconsideration. [2] The section, however, is permissive in character and merely authorizes the Commission to rescind, alter, or amend its orders when a proper showing is made to it for that purpose. The Commission is, therefore, necessarily vested with certain discretion and it is not to be assumed that an order or decision fixing the rights and obligations of the respective parties would be lightly cast aside upon the mere petition of one of the parties who thereafter became dissatisfied. [3] When the rights of the parties have been adjusted by mutual agreement approved by the Commission, the order of approval is entitled to the same weight as an award made after a full hearing. If one of the parties to such an agreement becomes dissatisfied and seeks to be relieved from its terms through the provisions of section 20d of the Workmen's compensation and Safety Act, it is incumbent upon him to make a showing before the Commission in the first instance that the agreement of compromise was not in fact his agreement, but that it was the result of fraud, mistake, duress or undue influence.

[4] Thus the provisions of the sections of the Civil Code relating to the rescission of contracts apply in a measure to an application of this kind made to the Commission. By the provisions of section 1691 of the Civil Code one who seeks to rescind a contract must do so promptly and must restore to the other party everything of value which he has received from him under the contract. In the case before us the petitioner failed to show before the respondent Commission that his contract of release was obtained through mistake, duress, fraud, or undue influence, and in the petition for the writ of *certiorari* he does not allege that his consent

to the contract was obtained through any of said influences. The compromise was made at his own solicitation and was very favorable to him at the time. In his briefs he argues that a mistake occurred as to the source of the injury, but as has been pointed out, this is merely a difference of opinion between two physicians, one who examined and treated him at the time of the injury, and one who examined him about two and a half years later. It appears without conflict that the petitioner waited three years after the date of his injury before applying to the Commission for relief under section 20d, and that he waited more than eight months after he had learned of the diagnosis of the second physician that his suffering came from a fractured spine. [5] It cannot be said, therefore, that he acted promptly in making his application for relief. It also appears that he made no effort to restore any of the benefits which he had received under the previous award, or under the agreement of compromise. [6] He argues that it was not necessary for him to do this because the insurance carrier would owe him that much or more. This, however, is not a fact which could be taken for granted. The relation of the injured spine to the fall from the ladder is a disputed point and it is altogether possible that upon a rehearing before the Commission it might be determined that the petitioner's disability resulted from some other cause for which the insurance carrier would not be responsible.

Paragraph 10 of the agreement of compromise was manifestly included through error by both parties in using a printed or mimeographed form and has no application to the subject matter of the agreement. [7] In any event, and giving it the broadest interpretation in favor of the petitioner, it merely confirms the jurisdiction of the respondent Commission as conferred by section 20d of the Workmen's Compensation and Safety Act. It does not in terms or by implication grant to either party the right to have the compromise agreement rescinded or altered unless the Commission should determine in the exercise of its jurisdiction that such action should be taken.

From the foregoing it necessarily follows that the respondent Commission had jurisdiction to grant or to deny the application for a readjustment of the claim and that it was

the function of the Commission to determine in the first instance whether the equities of the case entitled the applicant to the relief demanded. [8] The order of the Commission recited that the application was denied upon the ground that the compromise and release was a bar to the claim for further relief. This does not necessarily mean that a compromise and settlement of a claim is in every instance a legal bar to an application for relief under section 20d. Though the ground assigned for the order may not be technically correct, if it was valid on any ground it is not subject to attack in this proceeding. [9] We hold that section 20d of the Workmen's Compensation and Safety Act confers upon the respondent Commission discretion to determine whether an application for the amendment or annulment of an award is equitable and that where no equities are shown it cannot be said that the Commission has acted without jurisdiction in denying such an application.

The order is affirmed and the writ discharged.

Langdon, P. J., and Sturtevant, J., concurred.

A petition by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 30, 1924.