This is a proceeding in certiorari under the Workmen's Compensation Act, to review an award made by the Industrial Accident Commission against the Maryland Casualty Company in favor of Hulda V. Dobson, as compensation for the death of her husband, alleged to have occurred from an accident while in the employ of George C Ellis. The award was made against the Maryland Casualty Company as insurance carrier for Ellis. Its claim is that the policy of insurance does not cover the accident which caused the death of Dobson.
The insurance policy was issued to Ellis by the Casualty Company of America. Afterward, and before the happening of the accident, the Maryland Casualty Company, by agreement with the original insurer, assumed all liability upon the policy and Ellis accepted it as the insurance carrier. By the terms of the policy the insurer agreed to pay all sums due from Ellis under the Workmen's Compensation Law [Stats. 1911, p. 796] because of any injury to those of his employees mentioned in the policy. The sixth clause provides as follows: "This policy shall cover only employees of the employer, legally employed, whose remuneration is included in said declaration, but nothing in this policy shall be construed as excluding any employee who may become entitled to compensation under the provisions of said Workmen's Compensation Law, and all amendments thereto." The declarations referred to are contained in a document attached to and made a part of the policy. The employees whose remuneration is therein stated, that are here involved, are therein described as those engaged in "General farm work excluding the operation of farm machinery (no blasting)."
The complainant asks that the award be annulled upon the following grounds: 1. That the commission granted a rehearing to Ellis on the ground of newly discovered evidence, in violation of its own rule requiring such evidence to be set out in detail in the application for a rehearing. 2. In taking further testimony without solicitation from either party. 3. In admitting and considering incompetent testimony relating to the meaning of the policy of insurance in question. 4. In determining that under said policy of insurance the plaintiff as insurance carrier for Ellis is liable to pay compensation for the death of said Dobson. *Page 493 
With respect to the first and second grounds we need only say that irregularities, or errors in mere matters of procedure, do not go to the jurisdiction of the commission to make awards, and are not grounds upon which this court can vacate an award. These grounds relate entirely to matters of procedure.
In like manner this court is unable to set aside an award because of the admission of incompetent evidence, provided there is enough competent evidence admitted to uphold the same. This disposes of the third ground.
The fourth ground presents the only matter for serious consideration. The question is whether or not this court can say that the commission erred as a matter of law, upon the uncontradicted evidence, in determining that the plaintiff herein was liable under the terms of the policy for the compensation awarded. We think the evidence is sufficient to support the award.
In carrying on his farming operations, Ellis used a caterpillar engine, and at the time of this accident it was being used to pull a disk harrow in harrowing a field, in the nighttime. A man named Grimes was the engineer in charge of the caterpillar engine, and was operating it at the time. In going across the field it was necessary to have a light at the other side at the point he wished to reach, so as to guide the engineer on the way. He directed Dobson to stay at one side until he had reached the farther side, and to hold the light at the proper place to guide him on his return. Dobson did so, and when the engine and harrow had returned, Dobson stepped to the left side of the caterpillar, waited until the disk harrows had got opposite to him and then put his lantern on a tool-box which was on the disk. This happened about the time the engine was turning to go back. This turn swung the engine and harrow about so that a bar attached to the harrow caught Dobson and threw him upon the disks, whereby he received the injury. It was no part of Dobson's duty to take care of the engine, except to assist at times in oiling it, and at the time of his injury he was not operating the caterpillar engine in any way, as above stated.
Implements ordinarily found upon a farm, such as plows, harrows, or wagons are not usually spoken of as machines in these times, when such things as mowing-machines, reaping-machines, threshing-machines, and various kinds of traction *Page 494 
engines are in common use in doing farm work. The operation of a caterpillar engine to pull a harrow would undoubtedly be within the meaning of the phrase, and the engineer who performed that task would not be covered by this policy. But one who harrows or plows a field, or drives a wagon, is not ordinarily said to be running machinery. There might be various things incidental to harrowing a field, or other farm work, where motor power is in use, that would require the service of a man, or men, in addition to the man who operated the motor engine. The only machine used in such work, as that word is commonly understood, would be the engine. The man in charge of it would be operating a farm machine, but those assisting to do the work of harrowing the field would not be so considered, unless they had something to do with the engine itself. Dobson at times did do something about the machine, as when he filled one of the grease cups, although at such times it was not in motion, but he was not operating the machine when he was standing at one end of the field holding a lantern to guide the engineer on his return from the other end, nor when, the engine having returned, he was placing his lantern on the tool-box of the barrow. He was assisting in the work of plowing the field, but was not assisting in the special part of the work requiring the operation of machinery. If, in view of the particular facts in this case, the phrase "general farm work, excluding the operation of farm machinery," is of uncertain import, then in resolving such uncertainty we are to be guided by the rule that in such a case the contract is to be interpreted most strongly against the party who caused the uncertainty to exist. (Civ. Code, sec. 1654) This policy was drawn by the insurer. It caused the uncertainty to exist. It is obvious that the purpose of inserting the exception was to avoid the risks incidental to the operation of machinery, and not to avoid the risks incidental to ordinary farm work. We think, therefore, that the meaning of the phrase should be restricted, so that it would include those who were actually engaged upon the machine, and not those who were assisting in general operations for which the machine furnished only the motive power. Giving it this meaning, it will be seen that it does not include the work upon which Dobson was engaged, and that he was not within the exception. This conclusion makes it unnecessary to discuss the other propositions presented. The award of *Page 495 
the commission was, therefore, properly made against the insurance carrier.
The award is affirmed.
Sloss, J., Wilbur, J., Richards, J., pro tem., and Angellotti, C. J., concurred.
Rehearing denied.