SARGENT v. A. B. KNOWLSON CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT — ONE ENGAGED TO RENDER PERSONAL SERVICE AN EMPLOYEE.

One engaged by a number of business firms to perform personal service for them as a night watchman was an employee rather than an independent contractor.

2. SAME—CO-EMPLOYERS—LIABILITY.

Where a night watchman, employed by a number of business firms to guard their property, was accidentally killed while on duty on the premises of one of the employers, all were jointly liable as co-employers under the

On application of workmen's compensation statutes to employers having limited number of employees, see note in L. R. A. 1917D, 144.

workmen's compensation act, although there was not a joint hiring in the sense that the employers or their representatives got together and jointly engaged the deceased's services.

3. SAME—AWARD AGAINST CO-EMPLOYERS MAY BE DIVIDED EQUALLY. The action of the department of labor and industry in dividing the award against the employers equally among them was so manifestly fair and just that it will not be disturbed by the Supreme Court on reviewing same.

Certiorari to Department of Labor and Industry. Submitted June 12, 1923. (Docket No. 28.) Decided November 13, 1923.

Maggie Sargent presented her claim for compensation against the A. B. Knowlson Company and others for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendants bring certiorari. Affirmed.

*Brown & Kelley, Crane & Crane,* and *W. J. Nash* (*Alexander & Ruttle* and *Albert E. Meder,* of counsel), for appellants.

*Taggart & Kingston,* for appellee.

SHARPE, J. On October 1, 1921, J. F. Sargent, a deputy sheriff of Kent county, and the then husband of plaintiff, procured the signatures of A. B. Knowlson Company, S. A. Norman & Company, The Brummeler-Van Stren Company, Grand Rapids Ice & Coal Company, Century Fuel & Materials Company, R. M. Schornstein, Rex-Robinson Furniture Company, E. J. Conroy, Breen & Halladay Fuel Company, Evans & Retting Lumber Company, and Central Fuel Company to a writing wherein they agreed to pay him fifty cents per night "for services in the capacity of watchman" for certain of their property located in the city of Grand Rapids. Prior to April 30, 1922, The Brummeler-Van Stren Company, the Century Fuel & Materials Company and E. J. Conroy terminated such

employment by agreement with Sargent. He also entered into agreements with F. Van Driele & Company, Wykes-Schroeder Company, and the Toledo Plate & Window Glass Company to watch their premises, the first two agreeing to pay him $5 per month and the latter fifty cents per night for such services. All of these firms were operating under the provisions of the workmen's compensation act, except the Evans & Retting Lumber Company.

On the night of April 30, 1922, Sargent, who had been furnished a key to the offices of some of the plants he was watching, was in the office of R. H. Schornstein. The police had no notice that he was furnished with those keys, and, on their attention being called to the light in Schornstein's office, three officers were sent to investigate. Seeing a man therein, they suspected that he was a burglar and demanded that he come out. A melee followed in which Sargent was shot and killed and two of the officers were wounded.

The plaintiff made claim to compensation under the act against all those whose plants Sargent was watching at the time of his decease. The deputy commissioner who conducted the arbitration awarded compensation against Schornstein and the company carrying his risk, only, at the rate of $7 per week for 300 weeks. On appeal to the full board, all of the defendants whose premises he was then watching, who were operating under the act, were held liable. The amount was increased to $14 per week, and each of the ten ordered to pay $1.40 per week for 300 weeks. This order is before us for review by certiorari on petition of all those against whom the award was made except Schornstein and the Breen & Halladay Fuel Company.

1. It is urged by all of the defendants that Sargent was, as to the service rendered by him, an independent contractor, and not an employee. The written mem-

orandum provided for payment at fifty cents per night to Sargent "for services in the capacity of watchman for our property." Under it he was to render personal service and to be paid therefor. The arrangement with those who did not sign the memorandum was of like nature. We can see no distinction between such an agreement and any other in which a man is hired by the day or month to perform a particular service. Counsel say that—

"he was authorized to do the work according to his own methods. He was not obligated to do the work in accordance with the wishes of the various respondents."

The service to be rendered by a night watchman is well understood. The deceased agreed to perform it. Manifestly, he was to do so in the usual way. There is no intimation that he could substitute another of his own choosing to do it for him. He entered into an undertaking for a personal service on his part, a service of hiring, and we think he was clearly an employee while performing it. In *Schroetke v. Jackson-Church Co.*, 193 Mich. 616 (L. R. A. 1917D, 64), and *Carvey v. W. D. Young & Co.*, 218 Mich. 342, a night watchman was considered an employee under the act. The cases relied on by defendants (*Perham v. American Roofing Co.*, 193 Mich. 221, and *Holbrook v. Olympia Hotel Co.*, 200 Mich. 597), wherein the plaintiff's decedent entered into a specific contract to do a particular work, are easily distinguishable.

2. The petitioning defendants insist that the accident resulting in Sargent's death did not arise out of and in the course of his employment by any defendant except Schornstein. The question presented is, For whom was the deceased working at the time of his death? Under the arrangement made with the several defendants, he was to watch all of their properties. While there was not a joint hiring in

224—Mich.—44.

the sense that the defendants, or their representatives, got together and jointly engaged the services of the deceased, it is a fact that each of them knew the nature of his employment and that he was rendering a service each night for them all.    His employment, therefore, was not several as to each of them.    We think they should be held to be co-employers and liable as such. Any other holding would lead to absurd results.    Supposing deceased while passing along the sidewalk had slipped and sustained an injury at the line separating the properties of two of the defendants; or supposing, as may be inferred from the record, that there was property not being watched by him between two of the properties he was watching and he had sustained an injury while passing in front of it, in whose employment would he have been at such times?    The mere fact that his injury occurred while he was on the premises of the defendant Schornstein should not render him alone liable when the service he was performing on the night in question was for the benefit of them all.    This conclusion seems inevitable unless we are to hold that the service rendered was not that of an employee within the language of the act, and this we are unwilling to do.

Our attention is called to *Western Metal Supply Co. v. Pillsbury,* 172 Cal. 407 (156 Pac. 491, Ann. Cas. 1917E, 390), and *Curran* v. *Newark Gear Cutting Machine Co.,* 37 N. J. Law Journal, 21.    In the former, the court held that the finding and conclusion of the commission that the deceased was at the time of his injury in the employ of but one of the persons for whom he was rendering service as a night watchman were conclusive.    The vigorous dissenting opinion of Mr. Justice Henshaw, concurred in by at least one of the other justices, may be read with profit.    In the *Curran Case,* where a similar state of facts was presented, the court said:

"The general employment of the deceased by all of the respondents was of the character usual in such circumstances, and I can well conceive that such an employment by a number of employers, whether jointly or severally, for the purpose of watching their respective premises, might be construed as being a general and continuous employment by all under which they would be liable for an accident to the employee arising out of and in the course of the employment."

It is true that this case was disposed of on other grounds and what was said may be regarded as *dictum*, but it is persuasive of the view of the court on the question.

It is insisted that the statute makes no provision for distributing the liability. If the relation of the defendants was that of co-employers, their liability was joint, and not several. Instead of making the award run against them jointly, the board divided it equally among them. This was so manifestly fair and just that we are unwilling to disturb it.

The award is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.