CONVEYORS CORPORATION OF AMERICA and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*November 8, 1929—February 4, 1930.*

For the appellants there was a brief by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *George C. Bliss* of Chicago and *Arthur Wickham* of Milwaukee, of counsel, and oral argument by *Mr. Wickham.*

For the respondents there was a brief by *Fawsett & Shea* of Milwaukee for the Seaman Body Corporation, and by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, for the Industrial Commission, and oral argument by *Mr. Edmund B. Shea* and *Mr. Levitan.*

The following opinion was filed December 3, 1929:

Fowler, J.   The workmen's compensation act, hereinafter referred to as the "act," defines an employer as one who has any person in service under any contract of hire, express or implied, oral or written, and an employee as one who is in the service of another under any such contract but not one whose employment is not in the usual course of the business of his employer.   Secs. 102.04 (2), 102.07 (4), Stats.   Sec. 102.03 (2) provides for compensation of an

employee where at the time of the accident he is performing service growing out of and incidental to his employment.

The contentions of the Conveyors Corporation fall under two general heads: (1) that it is not liable because Galko was not its employee but the employee of the Body Corporation if at the time of accident he was an employee at all within the meaning of the act; and (2) that if Galko was its employee it is not liable because he was not injured in the usual course of the corporation's business.

Under the first head the Conveyors Corporation attempts, inferentially at least, to shift liability for compensation, if any exists, to the Body Corporation. That Galko was an employee of the Body Corporation does not subject that corporation to liability, unless at the time of his accident he was performing a service for that corporation incidental to his employment. The workman must be performing a service for the company employing him when injured and the service must be incidental to his duties to that company. Collins was not an employee of the Body Corporation. The Body Corporation owed no duty to him. It was under no duty as an employer to rescue him from his position of danger. Galko in assisting to rescue Collins was performing no service for the Body Corporation and his act towards rescue was in no sense incidental to his duties under his contract of employment with that corporation. Upon no theory could the Body Corporation be held liable.

Under this head the claim is also made that Galko was not an employee at all because no contract of hire existed for performing the work of rescue. There was no express contract of hire for that work and no agreement to pay a wage therefor. But there was a contract of employment by implication and that contract was with the Conveyors Corporation. This arises from the following considerations. It is the duty of an employer to rescue his employee from a position of imminent danger in an emergency. *Dragovich*

*v. Iroquois Iron Co.* 269 Ill. 478, 109 N. E. 999; *Bessemer L. & I. Co. v. Campbell,* 121 Ala. 50, 25 South. 793; *United States F. & G. Co. v. Industrial Acc. Comm.* 174 Cal. 616, 163 Pac. 1013. Any other rule would be inhuman and unthinkable. Our statute imposes such duty. It requires that the employer "shall do every other thing reasonably necessary to protect the life" of the employee. Sec. 101.06. Collins was an employee of the Conveyors Corporation and was in a position of imminent danger and it was the corporation's duty to rescue him. The corporation could only act through its agents or employees. Becker, also an employee of the corporation, was the only agent of the corporation who was present. There was no one else to act for his employer when he found Collins overcome in the bottom of the tank. It was his duty towards his employer to act immediately and with greatest possible speed to rescue Collins, who was not known to be beyond resuscitation. It was as much his duty to rescue Collins as it was the employee's duty to rescue the employer's property from fire in *Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 297, 174 N. W. 899. Becker could not remove Collins alone. In the emergency he was by necessary implication authorized to procure assistance. 40 L. R. A. N. s. 1180; 18 Ruling Case Law, p. 580; *State ex rel. Nienaber v. District Court,* 138 Minn. 416, 165 N. W. 268. Those whom he procured were during the rescue acting for the employer of Collins and Becker, the Conveyors Corporation. Compliance with the request of Becker for assistance under the circumstances constituted them employees of that corporation. One so complying is not a volunteer, but an employee within the meaning of the act, whether the employee making the request has express authority to procure help or an emergency exists from which authority is implied. 28 Ruling Case Law, pp. 760, 761; *West Salem v. Industrial Comm.* 162 Wis. 57, 155 N. W. 929.

Little remains to be said under the second general con-

tention of the Conveyors Corporation, that if Galko was an employee he was not injured in the usual course of the company's business and thus without the act. As already stated, it is the duty of an employer to rescue an employee from a position of imminent danger into which he gets in the course of his employment. One employee attempting the rescue of his fellow employee is engaged in the performance of a duty incumbent on a manufacturer in the conduct of his business. Although such emergencies do not regularly occur, they do occur at times in the usual course of any manufacturing business, and an employee engaged in such rescue may properly be held to be engaged in the usual course of his employer's business.

It thus appears that Galko was for the time being an employee of the Conveyors Corporation, employed for and in the special work of rescuing Collins. He was injured while performing a service growing out of and incidental to his such employment and his widow is entitled to compensation. The Conveyors Corporation claims that there is no testimony from which the commission could fix the amount of the award. Galko was engaged as a helper of the fireman of a power plant. His compensation as such was $42 per week. The basis for computation of the compensation, however, is not his such earnings but the earnings of one engaged in the work at which he was employed when injured. *West Salem v. Industrial Comm., supra.* There was no wage fixed for his such work and his compensation must be computed on the reasonable value of the work. The ordinary wage paid for such work as is involved is ordinarily the basis of fixing recovery on *quantum meruit.* But as matter of common knowledge there is no customary wage for such rescue work as is here involved. No direct testimony could from the nature of the case be produced as to the reasonable value of such work. But compensation should not be denied for this reason. The amount paid may be arrived at indirectly by analogy. The commission took

$1,400 per year as the basis of the award. Galko was a common laborer and his wage as such was a half more than the commission took as basis for the award. The commission in absence of testimony to the value of the same kind of service as he was doing might take testimony of the wage of similar service. Work in the tank of the ash conveyor, where hot ashes such as Galko handled in his ordinary work were frequent, might not unreasonably be considered as similar to his regular work. It is common knowledge that common labor commands $5 a day in some lines at least, and we think the commission might properly take that wage as a basis of computation.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 4, 1930.