MURPHY SUPPLY COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN, imp., Respondent.

*November 10—December 8, 1931.*

For the appellants there was a brief by *Olin & Butler,* and oral argument by *Clifford G. Mathys,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

NELSON, J. The facts, though somewhat meager, are not in dispute. Morley Murphy Supply Company, hereinafter called the Morley Company, and the Murphy Supply Company, hereinafter called the appellant, were at all times mentioned herein separate corporations, doing business in the city of Green Bay. Their respective places of business are situated about half a block apart. About twenty years ago both companies desired to have their places of business watched by a watchman during the night time and on Sundays and holidays. Neither company felt able singly and separately to employ a night watchman, so it was agreed between these companies that the Morley Company should select and hire a workman to perform services as a watchman for both companies. Just what the agreement was does not appear. It does appear, however, that during all the years when such arrangement existed, the Morley Company,

with the entire approval of the appellant, from time to time hired different persons to perform the services of night watchman for both companies. The person so employed made regular inspections of both places of business. His hours of work commenced at six o'clock and continued until four or five o'clock in the morning. Every night the watchman alternately inspected the two places of business, punching time clocks from time to time during the night as he proceeded with his work. The premises of the Morley Company were somewhat more extensive as to floor space than those of the appellant. Fredrickson had been employed as such night watchman for about five or six years. In the Morley Company's place of business he was required to punch seventeen time clocks and in the appellant's place of business four clocks. Wages received by him at the time of his injury amounted to $105 per month. While the Morley Company attended to the matter of paying him his wages, the appellant contributed the sum of $40 each month toward the payment of such wages. On April 3, 1930, the applicant first visited the premises of the appellant for the purpose of discharging his duties for said company. While on such premises he fell into an opening in the floor which resulted in his injuries and subsequent disability. After hearing, the commission found "that at the time of his injury the applicant was in the employ of the Murphy Supply Company and injured as a result of a hazard growing out of and incidental to his employment" and ordered compensation to be paid by Murphy Supply Company to the applicant.

Appellant contends (1) that Fredrickson, when injured, was performing services as an employee of the Morley Company and not as an employee of the appellant, and (2) that if the appellant is liable at all it is liable jointly with the Morley Company and the award herein should have been made against both companies jointly.

Appellant's first contention rests largely upon the claim that Fredrickson was not its employee but was in fact the employee of the Morley Company and was simply performing watchman services pursuant to a contract between the two companies under which the Morley Company agreed to furnish watchman services to the appellant. Were this the undisputed situation shown by the record there would be much merit in appellant's contention and this case would be ruled by *Visiting Nurse Asso. v. Industrial Comm.* 195 Wis. 159, 217 N. W. 646, and similar cases in apparent accord therewith. *Murray v. Union R. Co.* 229 N. Y. 110, 127 N. E. 907. However, the facts of this case do not permit the application of the rule of law stated in *Visiting Nurse Asso. v. Industrial Comm., supra.* Quite the contrary is true. The Morley Company was in no sense engaged in the business of furnishing night-watchman services to other industries. In the *Visiting Nurse Asso. Case,* such association agreed to furnish the Gridley Dairy Company with nursing services. Pursuant to such agreement it furnished a nurse to the Gridley Company for whose services it charged the company an amount somewhat in excess of the wages paid by the association to the nurse performing the nursing services which resulted in a profit to the association. The nurse in that case who was injured was properly held to be an employee of the association. In the present case it clearly appears that Fredrickson was in the employ of both companies. At the very outset of the arrangement both companies desired the service of a night watchman. Neither company felt itself able to employ a night watchman alone. Both agreed to employ a watchman who would perform services for both companies. The appellant constituted the Morley Company its agent to select the particular individual to perform such work and agreed to contribute a definite amount toward the wages of the workman so employed

based upon the services respectively performed for the two companies. There is nothing in the record upon which it can be suggested that the Morley Company made any profit out of the arrangement. There are no facts in the record which justify, much less compel, the application of the rule stated in *Visiting Nurse Asso. v. Industrial Comm., supra.*

This leaves for consideration appellant's second contention that since the applicant was jointly employed by both companies to perform watchman services for both of them, both companies should be held jointly liable. The question which this contention presents is one of first impression so far as this court is concerned. While there is authority supporting appellant's contention (*Page Engineering Co. v. Industrial Comm.* 322 Ill. 60, 64, 152 N. E. 483; *Sargent v. Knowlson,* 224 Mich. 686, 195 N. W. 810, 30 A. L. R. 993, 995; *Curran v. Newark G. C. M. Co.* 37 N. J. Law Jour. 21), we do not feel compelled to follow it for the reason that this court has consistently held, ever since the workmen's compensation act was adopted, that the clear intent and purpose of the act is to burden the particular industry in which the injury to an employee occurs, with the damages resulting from such injury. See *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209, concurring opinion by Mr. Justice MARSHALL. Also *Germantown v. Industrial Comm.* 178 Wis. 642, 190 N. W. 448; *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; *Schaefer & Co. v. Industrial Comm.* 185 Wis. 317, 201 N. W. 396; *Conveyors Corp. v. Industrial Comm.* 200 Wis. 512, 228 N. W. 118, and *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433.

We deem the rule which seeks so far as possible to place the burden upon the particular industry in which the employee is working at the time of his injury essentially just and fair. The Morley Company was in no sense responsible for the condition in the appellant's place of business which resulted in injury to the applicant. The particular work

being performed by applicant at the time of his injury was that of the appellant and was not in any sense the work of the Morley Company and may not in reason be said to be incidental to any duties which he was, under his contract with the Morley Company, to perform for it. *Conveyors Corp. v. Industrial Comm., supra.* We therefore conclude that the circuit court was in all respects correct in affirming the award and order of the Industrial Commission herein.

*By the Court.*—Judgment affirmed.